## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **LORNA VINSANT** | : | Civil Action No. |
| **723 Western Avenue** | : | |
| **Covington, Kentucky 41011** | : | Judge |
| | : | |
| **Plaintiff** | : | |
| | : | |
| -vs- | : | **COMPLAINT WITH JURY DEMAND** |
| | : | |
| **WNB GROUP, LLC** | : | |
| **dba THE RAY HAMILTON MOVING** | : | |
| **COMPANY** | : | |
| **4817 Section Avenue** | : | |
| **Cincinnati, Ohio  45212** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JAY WALLIS** | : | |
| **6326 Trail Ridge Court** | : | |
| **Loveland, Ohio  45140** | : | |
| | : | |
| **Defendants** | : | |

Now comes Plaintiff Lorna Vinsant and for her complaint against the Defendants hereby states as follows.

## THE PARTIES

1. Plaintiff is a citizen of the State of Kentucky, residing in Kenton County.  Plaintiff is female and over the age of forty.

2. WNB Group, LLC dba The Ray Hamilton Moving Company ("Ray Hamilton") is a corporation organized under the laws of the State of Ohio and doing business in Hamilton County.  It is an employer as that term is defined under Ohio Revised Code §4112.01 et seq.

3. Jay WalIis ("Wallis") is the President and CEO of Ray Hamilton. He is an agent of Ray Hamilton and an employer as that term is defined under Ohio Revised Code §4112.01 et seq. He is a citizen of the State of Ohio.

## JURISDICTION AND VENUE

4. Jurisdiction over the parties in this Court is based upon 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

5. Venue exists in this district pursuant to 28 U.S.C. §1391(b)(1) because all the Defendants reside in this district and also 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

6. Plaintiff is a long time employee of Ray Hamilton. In June of 2017, she was re-employed by Ray Hamilton to the position of Controller. Plaintiff served in that capacity until October of 2019. A copy of Plaintiff's initial hiring document signed by her dated June 17, 2017, is attached as Exhibit A.

7. Throughout Plaintiff's employment, she performed her job duties in a capable and competent manner. In fact, beginning in January of 2019, Wallis, on behalf of Ray Hamilton, reluctantly recognized Plaintiff for her outstanding performance by raising her salary from $80,000 to $125,000 per year. Beginning in January 2019, she was paid a bi-weekly amount of $4,807. A copy of the internal Sheakley HR Solutions Pay Rate Change for Ray Hamilton is attached as Exhibit B.

8. On or about September 26, 2019 Wallis claimed to be dissatisfied with the sales amount of Local Revenue being generated by Ray Hamilton. Prior to September 26, 2019, Plaintiff was not charged with responsibility for this area of the Ray Hamilton Company.

9. In late September and early October, Wallis convinced Plaintiff to relinquish some of her Controller job duties and assist in improving Ray Hamilton's Local Revenue Market division of Ray Hamilton. Wallis falsely told Plaintiff that her expertise was needed to assist in increasing sales for Ray Hamilton in the Local Revenue market. Unbeknownst to Plaintiff, Wallis was using the reduction in revenue in the Local Revenue Market as a pretext to later terminate Plaintiff because of her age and sex.

10. Although Plaintiff had never been involved in sales, she agreed to help Ray Hamilton in increasing sales for the Local Revenue section of the company because she was a team player.

11. At Wallis' request, between October 14th and Oct. 21st, Plaintiff began training other less qualified persons to assume some of her Controller duties so that she could devote more of her time to managing the Local Revenue department.

12. On or about October 21, 2019, Plaintiff was unexpectantly demoted by Wallis to a position titled "Local Sales Manager". Her prior job responsibilities as Controller were transferred to other individuals and her compensation was reduced by half to $62,500 per year. She was presented a "Term of Employment Sheet" wherein she was asked to agree to the involuntary change in her job duties. A copy of that document is attached as Exhibit C and incorporated by reference.

13. Wallis demanded within the Local Sales Manager document that as part of Plaintiff's performance, she was required to achieve sales of $900,000 in the Local Revenue

Market by the end of the year 2019. Through the nine months ending September 30, 2019, Ray Hamilton had only generated $465,835.24 in local sales revenue. A redacted copy of the Ray Hamilton Profit & Loss from January through September 2019 is attached as Exhibit D. Plaintiff knew that Wallis' assignment of the performance metric of $900,000 in sales by the end of 2019 was unachievable. She was being set up to fail.

14. Plaintiff objected to her demotion, reduction in salary, elimination of her Controller job duties and responsibilities, and the assignment of performance metrics which were unachievable. She refused to sign the "Term of Employment" sheet. Plaintiff asked Wallis why her salary was being reduced. She never received a response from Wallis or any individual or manager employed at Ray Hamilton.

15. Nevertheless, on October 28, 2019, at 8:52 a.m., Ray Hamilton, through its authorized representative Amy Finnell, forwarded an email to Plaintiff with a revised copy of the Term of Employment sheet which indicated that Plaintiff must sign the sheet and accept the terms of her demotion, reduction in salary, elimination of her Controller job duties and responsibilities, and the assignment of performance metrics which were unachievable by Friday, November 1, 2019 (Attached as Exhibit E)

16. Left with no other choice, Plaintiff sought the advice of counsel relating to issues of her employment with Ray Hamilton.

17. On or about October 29, 2019, counsel for Plaintiff emailed a letter to Wallis seeking information regarding the changes in Plaintiff's employment and why a reduction in salary was necessitated. A copy of the letter sent to Wallis is attached as Exhibit F and incorporated by reference.

18. Upon receipt of the letter from Plaintiff's counsel, Wallis telephoned Dennis Loftus ("Loftus"), the then Vice President of Sales for Ray Hamilton. During the telephone conversation with Loftus, Wallis stated to Loftus that "Lorna has lawyered up, she is suing me (which was untrue) and I [meaning Wallis] need to put her on paid leave."

19. Wallis then asked Loftus to participate in a phone call with Plaintiff.

20. During the evening of October 29, 2019, Plaintiff received a telephone call from Wallis and Loftus wherein Wallis informed Plaintiff that she was being immediately placed on administrative leave and that she should not return to work at Ray Hamilton. Wallis indicated he "needed to figure something out."

21. Immediately after the telephone conversation, Plaintiff sent an email dated October 29, 2019, at 8:48 p.m. to Wallis confirming that she was being placed on administrative leave. (Attached as Exhibit G). No response from Wallis was received in response to the email.

22. Later that evening, Plaintiff sent a second email to Wallis that she would be at the Ray Hamilton office the next morning to obtain a document from Wallis confirming that she was being placed on administrative leave because "they need to figure some things out." A copy of the email is attached as Exhibit H. Plaintiff expected to be paid her regular salary at the rate of $125,000 per year while on administrative leave.

23. The confirmation of Plaintiff's salary increase to $125,000 in January 2019 is reflected in a Ray Hamilton Payroll Information form ("Plaintiff's Payroll Information form"). (Attached as Exhibit I)

24. Unbeknownst to Plaintiff, Wallis had decided to terminate Plaintiff. In an attempt to reduce Ray Hamilton's back pay damages, Wallis "doctored" Plaintiff's Payroll Information form by writing that the raise Plaintiff received on January 16, 2019 wasn't really a raise, but

5

instead a $45,000 bonus. Wallis backdated Plaintiff's Payroll Information form to November 15, 2019 and hand wrote, "Approved bonus 2019 of $45,000, to be paid via payroll base Salary will remain @ $80,000." (Attached as Exhibit J)

25. Thereafter, on or after November 18, 2019, Plaintiff received a letter from Aflac Insurance dated November 18, 2019, which informed her that "Ray Hamilton has notified us that you are no longer with their organization. We know that change in employment can have a big impact on your life." (Attached as Exhibit K)

26. Ray Hamilton paid Plaintiff severance disguised as administrative leave pay from November 1, 2019 through December 12, 2019, at the rate of $62,500 per year not $125,000, nor $80,000 as reflected in the November 15th "doctored" payroll document. This is laid out in Plaintiff's pay stub for the period ending December 12, 2019. A copy of Plaintiff's paycheck is attached as Exhibit L. Plaintiff was not paid for any alleged "administrative leave time" after December 12, 2019. Plaintiff was not informed by Ray Hamilton that she would not be paid for any time after December 12, 2019.

27. Thereafter, Ray Hamilton filed a notice with the Ohio Bureau of Employment Services indicating Plaintiff was "either partially or totally unemployed due to lack of work/layoff from WNB Group, LLC. (Ray Hamilton)" as of December 13, 2019. A copy of the notice is attached as Exhibit M.

28. By January 3, 2020, Plaintiff had not received a paycheck from Ray Hamilton for the period after December 12, 2019. On January 3, 2020, she wrote by email to the Ray Hamilton HR representative, Cassie Laker, and also Wallis asking, "Would you tell me when I will receive my pay. I did not get it via direct deposit as usual." A copy of the email is attached as Exhibit N.

6

29. On January 6, 2020, Cassie Laker, on behalf of Ray Hamilton, wrote to Plaintiff in response to her January 3, 2020 email informing Plaintiff for the first time that she was no longer employed by Ray Hamilton. She stated:

> Jeanne McCoy and Dave Kamp have been in touch with Mark Byrne about <u>our offer of re-employment</u>, which was supposed to be effective December 23, but have not heard back or been able to reach him since they last spoke the week of December 16. I suggest that you reach out to him directly. (Emphasis added)

30. Plaintiff was aware that some settlement discussions were ongoing between her counsel and the lawyers for Ray Hamilton. Nevertheless, she was unaware that she had been laid off as of December 13, 2019 for lack of work.

31. Consequently, Plaintiff wrote to Cassie Laker and Jay Wallis on January 6, 2020:

> My understanding was that there was a discussion for me to return to the same position that I was previously demoted to with a continuation of the 50% reduction in my salary. If there is any formal offer for me to return to my employment an please forward it to me in writing. Further I am still waiting for my paycheck that the company promised to pay after placing my on involuntary leave. Please let me know when I can expect the deposit of that amount in my account.

32. Plaintiff never received a response to her January 6, 2019 email, nor a written "offer of re-employment" from Ray Hamilton. Instead, Ray Hamilton invited Plaintiff to continue settlement discussions through February 2020. Those discussions were unilaterally ended by Wallis in mid-February of 2020.

33. The decision to place Plaintiff on administrative leave and unlawfully terminate her on or before December 13, 2019 was made by Wallis and Ray Hamilton.

7

## COUNT ONE
### (Age Discrimination in Violation of Ohio Revised Code §§4112.02(A), 4112.14(A), and 4112.99)

34. Plaintiff realleges the allegations contained in paragraphs 1 through 33 as if fully rewritten herein.

35. Plaintiff was treated differently than a similarly situated male who was responsible for local sales at Ray Hamilton in 2019 and 2020. That person is a younger male who was never required to reach a performance metric of $900,000 in sales. Furthermore, the pretextual nature of Ray Hamilton's actions in attempting to force Plaintiff to leave her Controller position for the Local Sales Manager position is demonstrated by the fact that after Plaintiff's termination, Ray Hamilton did not seek another individual to replace and assist in the Local Sales department because that area of the company was allegedly underperforming.

36. Plaintiff was replaced in her Controller position by a substantially younger person.

37. Ray Hamilton and Wallis hid their unlawful conduct by claiming that Plaintiff was underperforming in her Controller position. To justify their pretextual claim, Wallis designed a job description for the position of Controller in 2020 that he backdated to June 12, 2017. This document did not exist at the time of Plaintiff's initial employment in 2017, nor at the time of her termination in 2019. Instead, the document was created by Wallis to justify Plaintiff's termination by claiming she had underperformed as the Controller. A copy of the fraudulent document is attached as Exhibit O.

38. Defendants Wallis' and Ray Hamilton's actions in reducing Plaintiff's compensation, placing her on administrative leave, and terminating her was because of her age in violation of Ohio Revised Code §§4112.02(A) and 4112.14(A).

39. Over the recent years, Wallis and Ray Hamilton have engaged in the practice of terminating employees because of their age. One example is Brenda Larson, a former employee over the age of 40 who was terminated in March of 2020 because of her age.

40. As a direct and proximate result of Defendants Wallis' and Ray Hamilton's unlawful actions, Plaintiff is entitled to all remedies as set forth under Ohio Revised Codes 4112.14(A) and 4112.99 including compensatory damages in the amount of $250,000 and punitive damages in the amount of $500,000, for a total of $750,000, jointly and severally, against Wallis and Ray Hamilton. Plaintiff is also entitled to her reasonable attorney's fees.

## COUNT TWO
### (Sex Discrimination and Hostile Sexual Environment Against Wallis and Ray Hamilton in Violation of Ohio Revised Code §§4112.02(A)) and 4112.99)

41. Plaintiff realleges the allegations contained in paragraphs 1 through 40 as if fully rewritten herein.

42. Plaintiff states that her demotion, placement on administrative leave, and termination were because of her sex in violation of Ohio Revised Code §4112.02(A). Plaintiff was replaced by a male in the Controller position.

43. Additionally, while Plaintiff was employed at Ray Hamilton, Wallis would, among other acts, regularly comment upon Plaintiff's "backside" by telling other Ray Hamilton employees that he "liked to look at her a__". Plaintiff objected to Wallis regarding his treatment of her and that she regarded it as hostile and unwelcome. Wallis also regularly made sexist remarks towards other employees such as Brenda Larson, calling her a lesbian to which Plaintiff objected. Nevertheless, Wallis continued to engage in this caveman like behavior.

44. Wallis' harassment was unwelcome and based on sex. The conduct was sufficiently severe and pervasive that it affected the terms, conditions, and privileges of Plaintiff's

employment. Finally, Wallis, as the president of Ray Hamilton, knew of the sexual harassment and as a result, both he and Ray Hamilton are jointly and severally liable for their unlawful conduct.

45. As a direct and proximate result of the Defendants Wallis' and Ray Hamilton's unlawful conduct in discriminating against and harassing Plaintiff because of her sex in violation of Ohio Revised Code §4112.02(A), Plaintiff is entitled to all remedies as set forth in Ohio Revised Code §4112 including, but not limited to, $250,000 in compensatory damages and $500,000 in punitive damages, for a total of $750,000 to be awarded joint and severally against Wallis and Ray Hamilton.

46. Additionally, Plaintiff seeks damages in the amount of $250,000 against Wallis and Ray Hamilton for their unlawful conduct in creating an unwelcome, hostile work environment against Plaintiff in violation of Ohio Revised Code §§4112.02(A) and 4112.99.

## COUNT THREE
### (Wrongful Termination in Violation of Ohio Public Policy)

47. Plaintiff realleges the allegations contained in paragraphs 1 through 46 as if fully rewritten herein.

48. There exists a clear public policy in the State of Ohio which protects employees from termination when they consult with an attorney regarding matters that would affect their employment and their employer's business. That policy is set forth in the cases of *Chapman v. Adia Servs Inc.*, 116 Ohio App.3d 534, 542-43, 688 N.E.2d 604, 609 (1st Dist. 1997); *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 530 (1st Dist. 2004); *Simonelli v. Anderson Concrete Co.*, 99 Ohio App.3d 254, 259, 650 N.E.2d 488 (10th Dist. 1994); *Daniels v. Fraternal Order of Eagle of Tecumseh No. 979*, 162 Ohio App.3d 446, 2005-Ohio-3657, 833 N.E.2d 1253 (2nd Dist. 2005); *Newcomb v. Hostetler Catering, Inc.*, Richland Cty. No. 2006 CA 0040, 2007-

Ohio-361 at ¶31 (5th Dist.); *Jacobs v. Highland County Bd.*, Highland Cty. No. 13 CA 20, 2014-Ohio-4194 at ¶22, 20 N.E.2d 300 (4th Dist. 2014); and *Terrill v. Uniscribe Prof'l Servs.* 348 F.Supp.2d 890, fn 6 (N.D. Ohio, 2004).

49. The personnel actions of Ray Hamilton in terminating Plaintiff places in jeopardy the public policy that exists in Ohio.

50. Plaintiff was terminated in December 2020 in retaliation for her consultation with counsel on October 29, 2019 regarding her employment and Ray Hamilton's business matters.

51. The evidence of Wallis' and Ray Hamilton's retaliation includes, but is not limited to, Wallis' statement to Loftus on October 29, 2019 that Lorna had "lawyered up" and falsely stating that Lorna was suing Wallis. Consequently, Wallis decided to place Plaintiff on leave and subsequently terminate her.

52. Ray Hamilton lacked any overriding, legitimate justification for Plaintiff's administrative leave and termination.

53. As a direct and proximate cause of Defendants' retaliatory actions, Plaintiff has been wrongfully discharged in violation of public policy and is entitled to damages.

54. The actions of Ray Hamilton and Wallis were in wanton and willful disregard of Plaintiff's legal and employment rights which entitles her to punitive damages against each Defendant individually in the amount of $250,000 in compensatory damages and $500,000 in punitive damages.

## COUNT FOUR
**(Retaliation in Violation of Chapter 4112.02(I) Against Wallis and Ray Hamilton)**

55. Plaintiff realleges the allegations contained in paragraphs 1 through 54 as if fully rewritten herein.

56. Ohio Revised Code §4112.02(I) prohibits Wallis and Ray Hamilton as employers from retaliating against Plaintiff for her opposition to their unlawful sexual harassment against her and others.

57. As described herein, Plaintiff opposed the sexist statements and unlawful conduct undertaken by Wallis against her and others while she was an employee.

58. Wallis knew of Plaintiff's opposition because Plaintiff informed him of such.

59. As a direct and proximate result of Plaintiff's opposition to Wallis' and Ray Hamilton's unlawful conduct, they retaliated against her by demoting her and terminating her in violation of Ohio Revised Code §4112.02(I).

60. As a direct and proximate result of their unlawful conduct, Wallis and Ray Hamilton are liable to Plaintiff for damages in an amount not less than $250,000 pursuant to Ohio Revised Code §4112.99.

61. Wallis' conduct was willful and in wanton disregard of Plaintiff's legal and employment rights entitling her to punitive damages in an amount to be determined.

62. This case is being refiled from a prior case that was dismissed without prejudice on March 12, 2021 in the Court of Common Pleas, Hamilton County, Ohio, under Case No. A2000934.

WHEREFORE, Plaintiff demands judgment against the Defendants, Wallis and Ray Hamilton, jointly and severally, in an amount to be determined at trial, but believed to be in excess of $500,000. For pre-judgment and post-judgment interest, compensatory damages, punitive damages, attorney's fees, and any other additional relief which the Court may believe Plaintiff is entitled. Plaintiff demands a trial by jury.

Respectfully submitted,

/s/   Mark J. Byrne
**MARK J. BYRNE (0029243)**
Trial Attorney for Plaintiff
JACOBS, KLEINMAN, SEIBEL & McNALLY, LPA
Cincinnati Club Building
30 Garfield Place, Suite 905
Cincinnati, Ohio  45202
Phone:  (513)  381-6600
Fax:     (513)  381-4150
E-mail:  mbyrne@jksmlaw.com