**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **LORNA VINSANT** | : | **CASE NO. 1:21-cv-00183** |
| | : | |
| **PLAINTIFF,** | : | **JUDGE BARRETT** |
| | : | |
| v. | : | |
| | : | **DEFENDANTS' MOTION TO** |
| **WNB GROUP, LLC DBA THE RAY** | : | **DISQUALIFY PLAINTIFF'S** |
| **HAMILTON MOVING COMPANY,** | : | **COUNSEL AND TO STAY** |
| **ET AL.** | : | **DISCOVERY** |
| | : | |
| **DEFENDANTS.** | : | |
| | : | |

Now come Defendants WNB Group, LLC dba The Ray Hamilton Moving Company ("WNB") and Jay Wallis ("Wallis") (collectively, "Defendants"), by and through the undersigned counsel, and hereby move this Court to disqualify Attorney Mark J. Byrne as Plaintiff's counsel under Ohio Prof. Cond. Rule 3.7(a) and to stay discovery pending a ruling on Defendants' Motion to Disqualify. A memorandum in support of this Motion is attached hereto.

Respectfully Submitted,

/s/ Stephen E. Imm
Stephen E. Imm (0040068)
Casey A. Taylor (0095966)
Finney Law Firm, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
(513) 943-5678
(513) 943-6669-fax
stephen@finneylawfirm.com
casey@finneylawfirm.com
*Counsel for Defendants*

1

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

Plaintiff Lorna Vinsant's ("Plaintiff") claims in this case are all based upon the alleged "termination" of her employment with Defendant WNB Group, LLC. She claims that she was terminated on the basis of her age and sex, and also claims that such termination was wrongful and retaliatory. A finding in Plaintiff's favor on any claim for wrongful termination, retaliatory termination, or discrimination on the basis of sex or age premised upon such termination, indisputably requires a finding that Plaintiff's employment was, in point of fact, terminated. Plaintiff's claims, thus, turn on this question, making it the crux of this case.

This matter was previously filed in Hamilton County Common Pleas Court, styled Case No. A2000934 ("State Court Case" or "State Court Predecessor"). Discovery in the State Court Case unequivocally established that the question of whether Plaintiff's employment was terminated by Defendants, versus abandoned by Plaintiff, is in dispute. Defendants assert that Plaintiff was invited and, indeed, instructed to return to work in December of 2019 (having previously been on a paid leave), and that this expectation was relayed by Defendants' prior counsel to Plaintiff's counsel, Attorney Mark J. Byrne ("Mr. Byrne"). However, Plaintiff ostensibly maintains that her employment was terminated.

There are but three witnesses with direct personal knowledge of these events: Defendants' prior counsel – Jeanne McCoy ("Ms. McCoy") and David Kamp ("Mr. Kamp") of Dinsmore & Shohl (collectively, "Prior Counsel") – and Mr. Byrne. Because the resolution of this critically important dispute of fact requires the testimony of Mr. Byrne (as Plaintiff cannot dispute the abandonment of her employment without it), Mr. Byrne is a necessary witness in this case and, thus, must be disqualified from serving as Plaintiff's counsel herein.

Defendants moved to disqualify Mr. Byrne in the State Court Case on these same grounds. It was only after Judge Goering indicated his inclination to grant such Motion that Plaintiff dismissed the State Court Case, merely one day after the hearing on Defendants' Motion, and subsequently filed the present action. There can be little dispute that Plaintiff's motivation in doing so was to avoid what was seemingly an imminent adverse ruling on Defendants' Motion given the timing and the fact that the State Court Case had been pending for over a year with multiple motions filed by Plaintiff still pending.

## II.  FACTS

Plaintiff filed her Complaint in this matter on March 17, 2021 (the "Complaint"). Doc. # 1. The Complaint asserts four causes of action: (i) Age Discrimination, (ii) Sex Discrimination, (iii) Wrongful Termination, and (iv) Retaliation. *Id.* The Complaint repeatedly and unequivocally alleges that Plaintiff was terminated, as is the entire basis of his action and, particularly, Count Three (for Wrongful <u>Termination</u>). Plaintiff's attempts at creative pleading cannot circumvent this indisputable fact.

Plaintiff served Defendants with discovery requests on August 26, 2020 ("Plaintiff's Discovery Requests") in the State Court Case, and Defendants responded to Plaintiff's Discovery Requests on October 29, 2020 ("Defendants' Responses") after obtaining an extension. A true and accurate copy of Defendants' Responses are attached hereto as **<u>Exhibit A</u>**. In Defendants' Responses, Defendants steadfastly contend that Plaintiff was not terminated but that, rather, she abandoned her employment. *See* Ex. A, Responses to Interrogatory Nos. 6-8 ("Plaintiff was not terminated. She abandoned her job"; "There was never any decision to terminate Plaintiff's employment. She abandoned her job"; "Plaintiff's employment was not terminated. She abandoned her job").

3

Defendants served Plaintiff with discovery requests on November 2, 2020 ("Defendants' Discovery Requests"). A true and accurate copy of Defendants' Discovery Requests is attached hereto as **Exhibit B**. Defendants' Discovery Requests included requests for admissions ("RFAs"). *See* Ex. B. On December 3, 2020, Plaintiff responded to the RFAs only ("Plaintiffs' RFA Responses"). A true and accurate copy of Plaintiff's RFA Responses is attached hereto as **Exhibit C**. Plaintiffs' RFA Responses deny that she was "notified, on or about December 19, 2019, that [she was] expected to return to work at WNB on December 23, 2019." *See* Ex. C, Response to RFA No. 10. Plaintiff's RFA Responses further assert that she was "instructed by Jay Wallis to not come to work which instructions continued through January of 2020 at which time she was terminated by Defendant." *See id.*, Respond to RFA No. 11.

From the State Court Case written discovery, it is clear that the question of whether Plaintiff was terminated or, rather, abandoned her job by failing or refusing to return to work upon Defendants' instruction was and is a critical issue in this case. On these grounds, Defendants filed their Motion to Disqualify Plaintiff's Counsel in the State Court on December 14, 2020. Relative to this Motion, Plaintiff argued that Defendants had waived the Attorney-Client Privilege relative to communications with their Prior Counsel in asserting that Prior Counsel had communicated Defendants' instruction for Plaintiff to return to work to Mr. Byrne. The State Court never ruled on this issue but accepted and reviewed privileged communications under seal relative to the same.[1] Importantly, Mr. Byrne also signed and filed an affidavit in opposition to Defendants' Motion, plainly testifying on behalf of his client as to this critical issue and admitting that he had conversations with Prior Counsel involving "the possibility of Vinsant returning to Work at [WNB]." A true and accurate copy of Mr. Byrne's Affidavit is attached hereto as **Exhibit D.**

---

[1] If it pleases the Court, Defendants would be happy to also provide the same documents/communications that were provided to the State Court in this action under seal.

The State Court held a hearing on Defendants' Motion on March 11, 2021 (the "Hearing"). A true and accurate copy of the March 11, 2021 Hearing Transcript is attached hereto as **Exhibit E.** At the Hearing, Mr. Byrne contradicted his Affidavit (Ex. D) and stated that he did not have any such discussion with Prior Counsel. *See* Ex. E, 16:15-21 (again, testifying: "I don't think Mr. Kamp or Ms. McCoy is going to come in here and testify to that. There may be documents I have not seen but, as I have told you before, I have not talked to Ms. McCoy on the 19th when allegedly this offer was made."). Upon questioning by Judge Goering, Mr. Byrne confirmed that the issue did not relate to the nature and value of legal services. *Id.*, 33:1-9. Similarly, Mr. Byrne could not point any substantial hardship of the nature required by Ohio Prof. Cond. R. 3.7. *Id.*, 33:10-21. However, Judge Goering noted that the matters for which Mr. Byrne's testimony would likely be required were "really contested." *Id.*, 33:1-2.

Based on the parties' respective filings and arguments as to whether Mr. Byrne would be precluded from serving as counsel as a necessary witness, Judge Goering stated: "I really want to know what you have to say about whether she was terminated or abandoned . . . I'm going to reserve the decision, but it appears to me you are likely to be a witness in this case." *Id.*, 34:1-7. See also id., 32:3-9 (Judge Goering reasoning: "It's kind of important whether she abandoned or was terminated because – I mean, I don't see how you're going to prove any of the other claims if, you know, she found another job and went and worked somewhere else because this one wasn't working out."). Mr. Byrne then "disagree[d]" and purported to warn Defendants and/or the Court: "I can tell you, Judge, they are not going to call me as a witness." *Id.*, 34:8-17.

The next day, March 12, 2021, Plaintiff dismissed the State Court Case without prejudice. This action closely followed.

5

### III. LAW AND ARGUMENT

Because Mr. Byrne is a necessary witness relative to a material issue in this case, his disqualification is required.

#### a. Legal Standard/Standard of Review

"Trial courts have the inherent power to disqualify an attorney from acting as counsel in a case when the attorney cannot or will not comply with the Ohio Rules of Professional Conduct and when such action is necessary to protect the dignity and authority of the court." *Reo v. Univ. Hosps. Health Sys.*, 11th Dist. Lake No. 2018-L-110, 2019-Ohio-1411, ¶ 17. A trial court's decision relative to a motion to disqualify counsel is reviewed under an abuse of discretion standard. *155 N. High v. Cincinnati Ins. Co.*, 72 Ohio St. 3d 423, 426 (1995). "In making these determinations, the court is not deciding whether a Disciplinary Rule will be violated, but rather preventing a potential violation of the Code of Professional Responsibility." *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St. 3d 256, 260 (1987).

#### b. Ohio Prof. Cond. Rule 3.7

Ohio Prof. Cond. Rule 3.7(a) instructs:

> A lawyer **shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness** unless one or more of the following applies:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case;
>>
>> (3) the disqualification of the lawyer would work substantial hardship on the client.

(Emphasis added).

The Ohio Supreme Court has found that "'[i]f * * * a lawyer learns or it is obvious that he * * * ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of

6

the trial and * * * shall not continue the representation in the trial'[.]" *155 N*. High, at 426, quoting an earlier version of Ohio Prof. Cond. Rule 3.7.[2] This is because "'[t]he roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.'" *Id*. "'[W]here the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." *Id.*

The purpose of this "Advocate-Witness Rule" is that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Ohio Prof. Cond. Rule 3.7, cmt. 1. Therefore, an opposing party has standing to object to an attorney's improper attempt to simultaneously serve as both an advocate and a witness. *See id.*, cmt. 2. "Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." *Id.*, cmt. 4.

The instant case is indisputably premised upon Plaintiff's allegation that her employment was "terminated" by Defendants. This allegation is inextricably woven throughout each of her causes of action. Thus, the "nature of the case" is one of wrongful termination – whether it be retaliatory or on the basis of age or sex. The contested fact(s) and testimony at issue are, thus, directly related to the nature of the case.

Second, Mr. Byrne's testimony is of the utmost importance. Plaintiff is truly at a crossroads. If she intends to continue to deny that she was instructed to return to work in December

---

[2] This case cites to DR 5-102(A), which was replaced by Ohio Prof. Cond. Rule 3.7 in 2007. However, courts have routinely found that the similarities between the two are such that cases analyzing the former remain instructive. *See, e.g., Brown v. Spectrum Networks, Inc.*, 180 Ohio App. 3d 99, 104 (1st Dist. 2008).

of 2019 and, thereby, continue in her assertion that she was terminated, Mr. Byrne is the only witness with personal knowledge capable of supporting this assertion. Anything else is hearsay and/or presents an even bigger concern relative to Mr. Byrne's representation (*i.e.*, if he did not relay this instruction to his client or if he refuses to rebut the claim that such instruction was relayed to Plaintiff through him). Thus, Mr. Byrne is a necessary witness. Without Mr. Byrne's testimony, Plaintiff cannot support the principal allegation underlying each and every one of her claims.

Finally, Mr. Byrne's testimony will undeniably conflict with other witnesses, as is demonstrated by the parties' relative positions taken in discovery and Mr. Byrne's testimony on this topic in the State Court Case.

### c. The Applicable Test

> [T]he proper procedure for a trial court to follow in determining whether to disqualify an attorney who has been called to testify by the opposing party is for the court to (1) determine whether the attorney's testimony is admissible and (2) determine whether the attorney's testimony is necessary. Under the second part of this analysis, the court must decide whether the attorney's testimony is relevant and material to the issues being litigated and whether the testimony is unobtainable elsewhere. If the court determines that the lawyer's testimony is admissible and necessary, the court must then determine whether any of the exceptions set forth under Rule 3.7 apply.

*Brown*, at 105. Because Mr. Byrne's testimony is both admissible and necessary, and because none of the delineated exceptions to disqualification apply, Mr. Byrne's disqualification is not only proper, but <u>mandatory</u> under the applicable Rule, as held by the Ohio Supreme Court. *155 N. High*, at 430 ("[W]e find the general prohibition applies, and it is mandatory: a lawyer cannot be both advocate and witness.").

### 1. *Mr. Byrne's Testimony is Admissible.*

The applicable test set forth in *Brown* first requires that the attorney's testimony be admissible. Evid.R. 402 states: "All relevant evidence is admissible, except as otherwise provided

by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible." There can be no dispute that My Byrne's testimony is relevant, as perhaps the entire case turns on whether Plaintiff was terminated versus abandoned her employment. Each and every claim in Plaintiff's Complaint repeatedly relies upon the allegation that she was terminated, but that purported fact is clearly in dispute, as evinced by the parties' opposing positions in discovery. *See Reo*, 2019-Ohio-1411, at ¶ 60 ("By virtue of the complaint, Attorney Reo made himself a necessary witness in the case. He should have anticipated that University Hospitals would file a motion to disqualify him as counsel, and he should not be heard to complain about something of his own creation.").

While Mr. Byrne serves as counsel for Plaintiff, his required testimony relates to the issue of whether Defendants instructed Plaintiff to return to work in December of 2019. The relevant communications on which Mr. Byrne will testify were between Mr. Byrne and Defendants' Prior Counsel, Mr. Kamp and Ms. McCoy. Such communications among counsel are plainly not privileged. Mr. Byrne's testimony is, thus, admissible.

### 2. *Mr. Byrne's Testimony is Necessary.*

"In order to determine whether a lawyer is likely to be a necessary witness, the trial court must first determine that the proposed testimony is material and relevant to the issues being litigated and that the evidence is unobtainable elsewhere." *City of Akron v. Carter*, 190 Ohio App. 3d 420, 429 (9th Dist. 2010); *Brown*, at 105. As set forth above, the proposed testimony is both material and relevant. Plaintiff's alleged termination, while disputed, serves as the basis for each

9

of her claims. It is axiomatic that there can be no claim for discriminatory, retaliatory, or otherwise wrongful *termination* without a termination.

The second part of the "necessity" determination relates to whether the attorney's testimony is unobtainable elsewhere. As is further explained above, Mr. Byrne is the only witness who can dispute with personal knowledge Defendants' claim that they instructed Plaintiff to return to work from her paid leave in December of 2019 through counsel. Defendants' Prior Counsel will testify that such instruction was relayed to Plaintiff via Mr. Byrne. Thus, they are likely necessary witnesses as well. However, unlike Mr. Byrne, Mr. Kamp and Ms. McCoy are not attempting to, at once, act as both advocate and witness.

Plaintiff, herself, may be able to testify that she was never made aware of Defendants' instruction, but that testimony would, at best, place Mr. Byrne in an adverse position, such that his continued representation would still be improper (*i.e.*, if he failed to inform his client of this material communication). However, Plaintiff conspicuously lacks personal knowledge as to whether Defendants held the expectation that she was to return to work and instructed her to do the same through counsel, as she was not a direct party to such conversations. Therefore, her only means of disputing this largely dispositive defense is via the testimony of Mr. Byrne, who cannot serve as both witness and advocate. As such, Mr. Byrne's testimony is unique and unobtainable elsewhere.

Mr. Byrne's necessity as a witness is further demonstrated by the binding precedent in *155 N. High*. In that case, the Ohio Supreme Court held that an attorney was a necessary witness where he (i) had "personal knowledge" regarding the claims and allegations as set forth in the Complaint, (ii) "was an active participant in dealings [with the other party]. . . continuing up to the time the lawsuit was filed," and (iii) "testified to conversations and actions taken by [the opposing party]."

10

*155 N. High*, at 428. Accordingly, the Court found "it obvious not only that [the attorney's] testimony was admissible, but also that it was clear that he 'ought to be called as a witness on behalf of his client'" and that "his testimony was necessary to prove his client's claims." *Id*. The necessity of the attorney's testimony was even more "glaringly obvious" because his testimony was necessary to "fill in gaps" in other witnesses' testimony and "contradicted other facts as testified to by the [opposing party]." *Id*.

Similarly, the *Reo* case, citing to *155 N. High*, found that the plaintiff's attorney was a necessary witness in an Ohio Consumer Sales Protection Act ("CSPA") case, where he was "the party with whom University Hospitals allegedly discussed the $36 discount – the same amount it later tried to collect – as well as the person who engaged in subsequent telephone conversations with University Hospitals that allegedly constitute violations of the CSPA." *Reo*, at ¶ 59. "[J]ust like the attorney in *155 N. High, Ltd., supra*, whose testimony was necessary to prove an insured's bad faith claim against its insurance company, Attorney Reo's testimony is necessary to prove the Reos' consumer claims against University Hospitals." *Id*., at ¶ 64 (finding that "[t]he trial court did not abuse its discretion in finding Attorney Reo's testimony to be necessary.") (emphasis in original).

In this case, Plaintiff claims (i) that she was terminated, and (ii) that her termination was discriminatory, wrongful, and retaliatory. Not only is Mr. Byrne's testimony admissible, relevant, and necessary on the issue of whether Plaintiff was, in fact, terminated, but he also has unique personal knowledge of the events leading up to her alleged termination, as he (i) personally engaged in conversations with Defendants and their counsel prior to the same, (ii) has "personal knowledge" of the claims and allegations in the Complaint that is unobtainable elsewhere, (iii) was "an active participant in dealings [with Defendants and their counsel]. . . continuing up to the time

11

the lawsuit was filed," and (iv) can (and should) testify as to "conversations and actions taken by [Defendants]," precisely as was the justification for disqualifying the attorneys in *Reo* and *155 N. High*. His testimony will "fill in gaps" in the testimony of other witnesses and is strictly necessary to "contradict" Defendants' position that Plaintiff abandoned her employment, assuming Plaintiff intends to continue denying the same. Furthermore, Mr. Byrne has already actually testified to this issue in both his Affidavit (Ex. D) and at the Hearing in the State Court Case (Ex. E, 16:15-21). Therefore, Mr. Byrne "ought to be called as a witness on behalf of his client," as his testimony is "necessary to prove [Plaintiff's] claims."

In the State Court Case, Mr. Byrne took the dubious and untenable position that he need not be disqualified from representing Plaintiff because his testimony would be cumulative of Defendants' Prior Counsel and, thus, he was not a necessary witness. *See, e.g.*, Ex. E, 16:5-11 ("So I'm not the only witness that would be to this alleged invitation/expectation. Both Mr. Kamp and Ms. McCoy are those witnesses, which means I'm not a necessary witness because they can get the testimony from someone else."). This argument literally makes no sense. Conflicting testimony – it seems strange to have to point out – is not "cumulative" testimony. Plaintiff and Mr. Byrne claim that Defendants terminated Plaintiff's employment for reasons other than her failure to appear for work – *i.e.*, because of her sex and/or age. Conversely, the evidence possessed by McCoy and Kamp is that Plaintiff – through Mr. Byrne – was instructed to return to work from her paid leave in December 2019, and failed to do so, thereby abandoning her employment.

Because these witnesses and evidence support a position contrary to what Mr. Byrne is asserting, it – by definition – cannot be "cumulative." "Cumulative evidence is defined as 'supporting the same point as earlier evidence.' Black's Law Dictionary describes 'cumulative evidence' as 'additional or corroborative evidence to the same point. That which goes to prove

what has already been established by other evidence.'" *State v. Siller*, 8th Dist. Cuyahoga No. 90865, 2009-Ohio-2874, ¶ 57 (internal citations omitted). *See also REO*, at ¶ 74, quoting Ohio Prof. Cond. Rule 3.7, cmt. 4 ("Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony ***will conflict with that of other witnesses***.") (emphasis added).

Not only does Mr. Byrne seemingly misunderstand the meaning of the term "cumulative," but his position is directly contrary to the Rule, which notes the importance of whether "the lawyer's testimony will conflict with that of other witnesses." Ohio Prof. Cond. R. 3.7, cmt. 4. Here, Mr. Byrne has already provided conflicting testimony. And either he will continue to do so or, perhaps more concerning, he will deprive his client (Plaintiff) of her sole means for rebutting the claim that she was instructed to return to work and, thus, abandoned her job when she failed or refused to do so. Either way, the risk of violating the Ohio Rules of Professional Conduct is far too great, and this Court has the extremely important task of preventing such a violation. *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St. 3d 256, 260 (1987).

Finally, if Mr. Byrne's testimony is so unnecessary, it is entirely unclear why Plaintiff would now include that very testimony in support of her claims. Mr. Byrne's Affidavit (Ex. D) is not limited to mere procedural matters, case posture, or authentication of case documents, as is typical of an affidavit from counsel. Rather, it provides affirmative testimony relative to disputed, material issues in the case. The same is true of Mr. Byrne's purported testimony at the Hearing in the State Court Case. *See* Ex. E, 16:15-21 (Mr. Byrne testifying: "I don't think Mr. Kamp or Ms. McCoy is going to come in here and testify to that. There may be documents I have not seen but, as I have told you before, I have not talked to Ms. McCoy on the 19th when allegedly this offer

13

was made."). Plaintiff's repeated utilization of Mr. Byrne's testimony – both in his Affidavit in opposition to Defendants' Motion in the State Court Case and at the Hearing relative to the same – demonstrates that Mr. Byrne cannot advocate for his client and her claims herein without putting on his "witness" hat. The Ohio Supreme Court is clear: "a lawyer cannot be both advocate and witness." *155 N. High v. Cincinnati Ins. Co.*, 72 Ohio St. 3d 423, 430 (1995) (instructing that this prohibition is "mandatory"). Plaintiff cannot have it both ways – she cannot disclaim Mr. Byrne's necessity as a witness, and the admissibility of his testimony, while simultaneously relying upon that very testimony in regard to material, substantive matters in this case.

Mr. Byrne is a necessary witness and, thus, cannot be permitted to continue in his representation of Plaintiff.

### 3. *There are no applicable exceptions under Rule 3.7.*

Because Mr. Byrne's testimony is both admissible and necessary, he cannot, at once, serve as both advocate and witness unless one of the exceptions set forth in Ohio Prof. Cond. Rule 3.7(a) applies. Those exceptions are: "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; (3) the disqualification of the lawyer would work substantial hardship on the client." Ohio Prof. Cond. Rule 3.7(a).

As demonstrated above, the issue of whether Plaintiff was, in fact, terminated is absolutely contested. Therefore, the first exception plainly does not apply. Second, Mr. Byrne's testimony admittedly does not and will not relate to the nature or value of the legal services rendered in the case. Ex. E, 33:1-9.

Thus, the only exception that could even arguably serve as the basis for Mr. Byrne's continued representation of Plaintiff is that it "would work a substantial hardship on [Plaintiff]." As noted by the Ohio Supreme Court:

14

> "This exception generally contemplates an attorney who has some expertise in a specialized area of law such as patents, and the burden is on the attorney seeking to continue representation to prove distinctiveness. Since the case was relatively straightforward and did not involve complex matters, the Texas court found that the case did not require the sort of expertise envisioned by DR 5-101(B)(4).

*155 N. High*, at 429, citing *Warrilow v. Norrell* (Tex.App.1989), 791 S.W.2d 515, 520 (internal citations omitted).

Similarly, Ohio courts have also routinely "required a showing of specialized knowledge in establishing the attorney's distinctive value" relative to this exception. *155 N. High*, at 429, citing *In Mentor Lagoons, Inc. v. Teague* (1991), 71 Ohio App.3d 719, 595 N.E.2d 392 (8th Dist. 1991). In that case, the court rejected the "notion that intimate familiarity with the case or mere increased expenses met this standard." *Id.*; *See, also, Schaub v. Mentor Lagoons Marina*, 11th Dist. Lake No. 89-L-14-054, 1990 Ohio App. LEXIS 2008, at *5-6 (May 25, 1990), *aff'd*, 60 Ohio St.3d 68, 573 N.E.2d 69 (1991) ("Essentially defense counsel's arguments are based on financial consideration, not expertise. Such is not the 'substantial hardship' contemplated by [the Rule] . . . [and] the issues in the present case are not complex and do not require specialized expertise."). In sum, "[t]he attorney who intends to invoke this exception has the burden to prove that his or her services provide a distinctive value and that his or her disqualification would work a substantial hardship on his or her client. Neither familiarity with the case nor mere added expenses are sufficient to prove this exception." *155 N. High*, at 429-30.

This is not a highly specialized or complex case in which Mr. Byrne is the only attorney qualified to represent Plaintiff – it is a garden variety employment law case. Moreover, financial considerations are not a "substantial hardship" contemplated under Ohio Prof. Cond. Rule 3.7(a)(3). Plaintiff voluntarily elected to file this litigation and, no doubt, understood that doing so would involve a financial commitment. Accordingly, none of the enumerated exceptions to Ohio

15

Prof. Cond. Rule 3.7(a) apply, and Mr. Byrne should be disqualified from representing Plaintiff, given the admissibility and necessity of his testimony.

### d. Stay of Discovery

Defendants respectfully request a stay of discovery pending the Court's ruling on the instant Motion. Defendants' request is far from unprecedented. *See Solomon v. Harwood*, Cuyahoga C.P. No. CV-07-644729, 2008 Ohio Misc. LEXIS 4593, *2 (Mar. 17, 2008) ("DUE TO THE PENDING DISQUALIFICATION ISSUES AND OTHER PENDING MATTERS BEFORE THIS COURT, DISCOVERY IN THIS CASE IS STAYED UNTIL FURTHER NOTICE.") (emphasis in original); *See also Sidenstricker v. Miller Pavement Maint.*, 10th Dist. Franklin Nos. 00AP-1146 and 00AP-14602001, Ohio App. LEXIS 4793 (Oct. 25, 2001).

On May 29, 2021, Plaintiff served Defendants with written discovery, seeking evidence and information pertaining to Defendants' claim that Plaintiff abandoned her job, including but not limited to privileged "written communications and emails between Defendants and its [sic] prior counsel Jean Goeppinger McCoy or David Kamp regarding, referring, or relating to any factual allegations that Plaintiff had abandoned her job" and confidential business records. A true and accurate copy of Plaintiff's May 2021 Discovery Requests are attached hereto as **Exhibit F**. S*ee, e.g.*, RPD Nos. 10, 11, 13 (without limitation).

Because Mr. Byrne is a necessary witness in this case and, particularly, as to this critical and hotly contested issue of Plaintiff's job abandonment, there is a grave, unjustifiable risk of prejudice and imminent, unavoidable harm to Defendants if Mr. Byrne is permitted to obtain and review such discovery (including responsive materials and answers other than those that are properly objectionable on the grounds of privilege). Specifically, having the benefit of reviewing such materials prior to his deposition and examination at trial will unquestionably taint his

16

testimony herein and prevent him from serving as an objective witness. Indeed, it is axiomatic that witnesses do not get to review such materials prior to rendering their testimony, particularly where the materials will potentially be used to impeach a less than truthful witness.

Similarly, it is entirely improper for a fact witness to further participate as an advocate by taking depositions, reviewing corporate records containing sensitive business information, etc. There is a substantial and unavoidable risk that continued participation in contentious advocacy will influence the witness' objective testimony, to the prejudice of the other parties. It is obviously inappropriate and atypical for a witness to ask questions of another witness on the record. In sum, the production of the requested documents to Mr. Byrne threatens the objectivity of his testimony and the integrity of the litigation as whole given his necessity as a witness. Therefore, a stay of discovery pending a ruling on this Motion to Disqualify Plaintiff's Counsel is not only appropriate, but vital to fairness and justice in this case.

## IV. CONCLUSION

Because Mr. Byrne is a necessary witness in this case, whose testimony is admissible, relevant, material, and unobtainable elsewhere, Defendants respectfully request that the Court grant this Motion and either require Mr. Byrne to withdraw from his representation of Plaintiff or disqualify him accordingly. Defendants also request that the Court order that discovery be stayed pending its ruling on this Motion to Disqualify Plaintiff's Counsel.

Respectfully Submitted,

/s/ Stephen E. Imm
Stephen E. Imm (0040068)
Casey A. Taylor (0095966)
Finney Law Firm, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245

                (513) 943-5678
                (513) 943-6669-fax
                stephen@finneylawfirm.com
                casey@finneylawfirm.com
                *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the U.S. District Court, Southern District of Ohio, on June 15, 2021, and served upon counsel of record via the Court's electronic filing system.

                /s/ Stephen E. Imm
                Stephen E. Imm (0040068)