UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lorna Vinsant,

        Plaintiff,                         Case No. 1:21cv183

    v.                                   Judge Michael R. Barrett

WNB Group LLC, *et al*.,

        Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants' Motion to Disqualify Plaintiff's Counsel and Stay Discovery (Doc. 8), Plaintiff's Response in Opposition (Doc. 13) and Defendants' Reply (Doc. 15). A hearing was held on Defendants' Motion on September 16, 2021. (Doc. 17).

Plaintiff Lorna Vinsant formally worked as a controller for Defendant WNB Group, LLC dba Ray Hamilton ("Ray Hamilton"). According to the Complaint, in September of 2019, Defendant Jay Wallis, the CEO of Ray Hamilton, asked Plaintiff to assist with the Local Department of Ray Hamilton. The Local Department is involved in local sales within the greater Cincinnati area. The amount of local sales for Ray Hamilton from January 1, 2019 through September 2019 was $465,835.24. Plaintiff agreed to help. On October 21, 2019, Wallis presented Plaintiff with a document detailing the changes in the terms of her employment, which included a reduction in Plaintiff's annual compensation from $125,000 to $62,500. While Plaintiff would have the opportunity to earn a commission on sales, Plaintiff knew that the Local Department, even with her assistance, could not

generate the additional $434,164.76 in sales by the end of 2019 in order to meet the $900,000 sales baseline established by Wallis to make up the difference in her salary. Plaintiff asked Wallis why her salary was being reduced, but did not receive a response. On October 28, 2019, Plaintiff was informed that she must return the October 21st offer by the end of the day. The next day, current counsel for Plaintiff, Mark Byrne, sent a letter to Wallis seeking information regarding the job change and reduction in salary. That night, Wallis called Plaintiff and told her that she was being placed on involuntary, paid administrative leave.

On November 5, 2019, counsel for Ray Hamilton, Jeanne McCoy and Dave Kamp, contacted Byrne. Over the course of the next month and a half, counsel discussed the possibility of Plaintiff's return to active employment. During this time, Plaintiff remained on administrative leave and continued to receive pay until December 12, 2019. When Plaintiff stopped receiving pay, she contacted Ray Hamilton to question why she had not been paid. Cassie Laker, who formally worked as Ray Hamilton's Human Resource Manager, responded: "Jeanne McCoy and Dave Kamp have been in touch with Mark Byrne about our offer of re-employment, which was supposed to be effective December 23, but have not heard back or been able to reach him since they last spoke the week of December 16. I suggest that you reach out to him directly." Plaintiff questioned whether there was a formal offer of re-employment, but did not receive a response.

Then on February 5, 2020, Plaintiff and her counsel met with McCoy, Kamp and Wallis to discuss Plaintiff's employment. The parties reached a settlement agreement, but the settlement later fell apart. Soon thereafter, Defendants hired new counsel, Stephen Imm, who now represents them in this matter.

In her Complaint, Plaintiff asserts four causes of action: (i) age discrimination, (ii) sex discrimination, (iii) wrongful termination, and (iv) retaliation.

Defendants maintain that the question of whether Plaintiff was terminated or whether she abandoned her job by failing or refusing to return to work upon Defendants' instruction is a critical issue in this case.  Defendants assert that Plaintiff was invited and, indeed, instructed to return to work in December of 2019 (having previously been on a paid leave of absence), and that this expectation was relayed by McCoy and Kamp to Byrne.  Plaintiff maintains that she did not abandon her job, and instead, her employment was terminated. Because of this dispute regarding the facts of the case, Defendants argue that Byrne is required to testify as to whether Defendants instructed Plaintiff to return to work in December 2019.  Defendants argue further that because Byrne is a necessary witness in this case, he must be disqualified from serving as Plaintiff's counsel.

In determining questions of lawyer disqualification, this Court looks to the codified Rules of Professional Conduct for guidance.  *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007) ("applying these accepted rules will lead to greater uniformity and predictability with regard to the ethical code of conduct").  In addition, S.D. Ohio Civ. R. 83.3(f) provides that the conduct of attorneys and the supervision of their conduct in this Court "shall be governed by the Model Federal Rules of Disciplinary Enforcement," which in turn provide that this Court abides by "the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits." Therefore, the ethical standards of the Ohio Rules of Professional Conduct apply.  *Accord*

*Storage Cap Mgmt. LP v. Robarco, Inc.*, No. 2:19-CV-4328, 2020 WL 1163820, at *3 (S.D. Ohio Mar. 11, 2020).

> Ohio Rule of Professional Conduct 3.7 states the following:
>
> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case;
> >
> > (3) the disqualification of the lawyer would work *substantial* hardship on the client.

Ohio R. Prof. Conduct 3.7 (emphasis in original). Under this Rule, Ohio courts have held that a "necessary witness" is someone whose proposed testimony is "relevant and material" and "unobtainable elsewhere." *Popa Land Co. v. Fragnoli*, 2009 WL 735969, *4 (Ohio Ct. App., Mar. 23, 2009) (citations omitted). "Stated differently, counsel's testimony must be admissible and unobtainable through other trial witnesses." *Id*.; *see also Brown v. Spectrum Networks, Inc*., 180 Ohio App. 3d 99, 104, 904 N.E.2d 576, 580 (Ohio Ct. App. 2008) ("Accordingly, if the lawyer's testimony would be duplicative or is obtainable from other sources, the lawyer should not be disqualified.").

Defendants argue the testimony of Byrne is admissible because communications among counsel are not privileged. Plaintiff does not argue to the contrary, but instead argues that Byrne's testimony is not admissible under Federal Rule of Evidence 408 because any statement made by Kamp that Plaintiff must return to her employment on December 23, 2019 was made during settlement negotiations.

During the hearing before the Court, Kamp testified:

4

> Q. And had you had discussions with representatives of the Ray Hamilton Company about whether or not that paid leave status was going to continue indefinitely?
>
> A. I did not. Jeanne McCoy did, which were communicated to me.
>
> Q. And what was the content of that communication from Jeanne?
>
> A. The content of that communication was: at some point prior to December 19th I was told that the company was getting tired and frustrated with paying her administrative leave when it did not appear that we were substantially advancing the ball on settlement, and that I needed to tell Mark that there was going to be a date certain that she either had to return to work or lose that administrative compensation.

(Doc. 18, PAGEID 280).[1] When questioned by counsel for Plaintiff at the hearing, Kamp also testified as follows:

> Q. The conversations that we had in November and December and January and February, including this December 19th, 2019, conversation, were all, from your perspective, in terms of settlement negotiations and discussions?
>
> A. My role, as I perceived it, was to get involved not for purposes of defending the company in litigation or sparring over substantive issues; it was to act as essentially *de facto* mediator.
>
> Q. And when we had our conversation on December 19th, 2019, that's what you were acting as even though you were representing the Ray Hamilton Company at that time?
>
> A. Correct. I mean, that was my role.
>
> Q. You did not view your role at that point in time as being a messenger for Ray Hamilton of delivering an unequivocal demand that she return to work or be fired?
>
> A. The concept of "come back to work or be fired" was not communicated directly to me. What I understood is, and appreciated, frankly, is that the negotiations were slow-moving and that the company was tired and frustrated of paying her to either not settle or make a commitment on returning to work. So it was more of an economic issue than an ultimatum.

---

[1]There appears to be no dispute that these prior communications between Defendants and Attorneys Kamp and McCoy are not privileged because Defendants have impliedly and expressly waived attorney-client privilege regarding these communications.

> Q. There was no discussion at any time about job abandonment, was there?
>
> A. The words "job abandonment" never came up.

(Doc. 18, PAGEID 282-83).  The Court later asked Kamp to clarify:

> THE COURT: All right. So the issue -- I don't know if you've become aware or not, but the issue that's been joined is whether she abandoned her post or whether she was terminated. I guess I'm trying to understand is if the conversation occurred as part of a settlement discussion or were you delivering a directive for her to return to work. That's the simple -- I think that's the issue. Right, guys?
>
> MR. BYRNE: I think so, Judge.
>
> THE COURT: Steve?
>
> MR. IMM: Yes, Your Honor.
>
> MR. KAMP: And the answer, unfortunately, is a bit of a hybrid in the sense that I understood that Ray Hamilton and its ownership were getting tired and frustrated with the pace of the negotiations, but we clearly were not truncating them on the 19th. But I also understood that the client wanted me to communicate to Mark that, as to the perpetuation of her administrative leave compensation, that they weren't going to pay her to continue negotiating over a position she was unlikely to return to.

(Doc. 18, PAGEID 286).

The foregoing testimony is only somewhat helpful to the Court. Clearly the statements regarding Plaintiff's return to work were made during settlement negotiations, but as Kamp testified, this was a "hybrid" situation.  The Court notes that Plaintiff's paid leave status may be relevant to the issue of mitigation, but it was not an offer to comprise the contested issue of demotion.  In response to questioning by Plaintiff's counsel at the hearing, Kamp testified as follows:

> Q. In terms of the position that she was to follow up in, was there -- did you and I have a discussion about me asking you what position are we talking about and what amount is going to get paid?

6

>A. And my answer was, because we did -- I voluntarily told you they want her to come back to work and I'm not entirely sure what that means, I assume it's come back to work under the demoted sales position and not her original COO position.
>
>Q. But as we talked, you weren't sure and did not know that answer?
>
>A. I, to this day, do not know that answer.

(Doc. 18, PAGEID 286-87).

However, even if Byrne's testimony was admissible or relevant, under Ohio Rule of Professional Conduct 3.7, it is not clear at this juncture that Byrne is a "necessary witness." As one Ohio court has observed:

>Testimony may be relevant and even highly useful but still not strictly necessary. [*Holbrook v. Benson*, 5th Dist. Stark, 2013-Ohio-5307, 3 N.E.3d 788, ¶ 13], citing *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, 942 N.E.2d 409, ¶ 19 (9th Dist.). A finding of necessity takes into account such factors as the "significance of the matters, weight of the testimony and availability of other evidence." *Id*., quoting *Akron* at ¶ 19. "A party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony." *Id*., quoting *Akron* at ¶ 19.

*Reo v. Univ. Hosps. Health Sys.*, 131 N.E.3d 986, 994 (Ohio Ct. App. 2019). In addition, it appears that Byrne's proposed testimony is obtainable through other trial witnesses. As the above testimony of Kamp indicates, both he and McCoy have direct personal knowledge of these events. Plaintiff has also submitted the declaration of Cassie Laker (Doc. 12), who states that Plaintiff did not abandon her job on December 23, 2019 because Laker was told by Wallis in a February 6, 2020 conversation that Plaintiff had been terminated from her employment as of December 20, 2019 – three days before the alleged job abandonment issue arose - due to lack of work.

Finally, this Court's observation in another case is equally fitting here:

>Although there may be some prejudice to Defendants here, the Court finds that the risk of prejudice is outweighed by Plaintiffs' interests in selecting their own counsel, which is "an important public right and a vital freedom

7

that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Banque Arabe*, 609 F. Supp. at 613 (citing *Melamed v. ITT Cont'l Baking Co.*, 592 F.2d 290, 293 (6th Cir. 1979)).

*Miller v. Food Concepts Int'l, LP*, No. 2:13-CV-00124, 2015 WL 6082602, at *8 (S.D. Ohio Oct. 16, 2015); *see also Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir.1988) ("Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice.").

Therefore, at this preliminary stage, the Court is not prepared to disqualify Plaintiff's counsel. This issue will likely require revisiting at a later stage in the proceedings. For the same reasons, the Court declines to stay discovery.

Based on the foregoing, Defendants' Motion to Disqualify Plaintiff's Counsel and Stay Discovery (Doc. 8) is **DENIED**.

**IT IS SO ORDERED.**

                                           */s/ Michael R. Barrett*
                                           Michael R. Barrett
                                           United States District Court