**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Lorna Vinsant,

        Plaintiff,                                            Case No.  1:21cv183

        v.                                                   Judge Michael R. Barrett

WNB Group LLC, *et al.*,

        Defendants.

**<u>OPINION & ORDER</u>**

This matter is before the Court upon Plaintiff Lorna Vinsant's Motion for Summary Judgment (Doc. 43) and Defendants WNB Group, LLC dba The Ray Hamilton Moving Company and Jay Wallis' Motion for Summary Judgment (Doc. 40).  These motions have been fully briefed.  (Docs. 47, 48, 55, 56, 66, 67).

**I.**      **<u>BACKGROUND</u>**

Plaintiff Lorna Vinsant first began working for Defendant WNB Group, LLC ("WNB") in approximately 2012.  (Doc. 39, Lorna Vinsant Dep., PAGEID 578).  When she was at work, Defendant Jay Wallis, the CEO of WNB, would make comments about Plaintiff's appearance.  (Doc. 39, Vinsant Dep., PAGEID 590).  In 2016, Plaintiff left WNB to work for the City of Cincinnati because she wanted "[a] new challenge," but also because she felt the comments Wallis made about her were unprofessional.  (Doc. 39, Vinsant Dep., PAGEID 592-593, 596).

In May of 2017, Plaintiff returned to work for WNB and was hired as Controller. (Doc. 42, Lorna Vinsant Decl., PAGIEID 931, ¶1).  Plaintiff testified that when she was asked to come back to WNB, she had no reluctance about returning.  (Doc. 39, Visant Dep., PAGEID 603).  Plaintiff's new job was similar to her old job, but she was making

$20,000 more than when she left WNB in 2016.  (Doc. 39, Vinsant Dep., PAGEID 603-605).  Wallis continued to make comments about Plaintiff's appearance.  For instance, Wallis would walk customers or vendors around the office and when he would see Plaintiff, he would tell the customer or vendor that he liked walking behind Plaintiff so he could "look at her ass."  (Doc. 39, Vinsant Dep., PAGEID 650).  Wallis also made comments when Plaintiff was working on the computer equipment underneath a desk that he liked it when Plaintiff was working under there so he could look at her "butt" or "ass." (Doc. 39, Visant Dep., PAGEID 651).

On January 16, 2019, Plaintiff received a salary increase of $45,000.  While Plaintiff describes the increase as a raise (Doc. 39, Visant Dep., PAGEID 615), payroll documents indicate that the increase was given as a bonus on top of her base salary of $80,000.  (Doc. 39-3, PAGEID 744 ("Approved Bonus 2019 of $45,000, to be paid via payroll. Base salary will remain @ $80,000 JDW 11-15-2019.")).

In September of 2019, Wallis asked Plaintiff to help with the Local Sales Department. (Doc. 42, Vinsant Decl., PAGEID 931, ¶ 3).  Plaintiff agreed. (Doc. 42, Vinsant Decl., PAGEID 932, ¶ 5).  On October 21, 2019, Plaintiff received a document explaining that her position would be changed to "Local Sales Manager" and her annual compensation would be $62,500.  (Doc. 42, Vinsant Decl., PAGEID 932, ¶ 6; Doc. 42-4, PAGEID 945).  The document explained that additional compensation would be available if annual sales for the department went above $900,000.  (Doc. 42-4, PAGEID 945). Because of her work as Controller, Plaintiff was aware that the amount of local sales for WNB from January 1, 2019 through September 2019 was only $465,835.24.  (Doc. 42, Vinsant Decl. ¶ 5, Exh. 4).  Plaintiff knew that the Local Sales Department would not be

2

able to generate an additional $434,164.76 in sales before the end of 2019 to meet the $900,000 threshold.  (Doc. 42, Vinsant Decl., PAGEID 933, ¶ 10).

Plaintiff consulted with an attorney, who then emailed a letter to Wallis on October 29, 2019.  (Doc. 42, Vinsant Decl., PAGEID 933-934, ¶ 14).  The letter stated:

> Please be advised that our firm represents Lorna Vinsant relating to her recent job change.  It is our understanding that on or before October 21, 2019, she was demoted to the title "Local Sales Manager" and her salary cut in half.  She was presented with a Term of Employment sheet where she was asked to acknowledge this change in her job duties.  She has asked us to evaluate the recent employment change.  In light of that request, please provide the details requiring the change in her job and why a reduction of her salary was necessitated.  Once I receive that information, I will be [in] a position to advise her regarding her legal and employment rights as she continues her employment with WNB Group, LLC.

(Doc. 42-6, PAGEID 951).  That same day, Wallis contacted Dennis Loftus, Vice President of Sales for WNB, and told him that Plaintiff had "lawyered up" and he intended to place her on administrative leave. (Doc. 41, Dennis Loftus Decl., PAGEID 929, ¶ 6). That evening, Plaintiff received a telephone call from Wallis and Loftus, who informed her that she was immediately being placed on involuntary paid administrative leave and she should not return to work the next day.  (Doc. 42, Vinsant Decl., PAGEID 934, ¶ 16).

Defendants hired counsel and the parties began settlement discussions.  On December 19, 2019, David Kamp, then counsel for Defendants, informed Plaintiff's attorney that even though the parties would continue to have settlement discussions, WNB would no longer pay Plaintiff administrative leave compensation unless she returned to work and earned it in a normal course.  (Doc. 18, PAGEID 281).[1]  Settlement

---

[1] Plaintiff argues that David Kamp's statement was during the course of settlement negotiations and is therefore inadmissible under Federal Rule of Evidence 408. While this may be true for the bulk of the conversations between Kamp and Plaintiff's attorney, Kamp's statement that Plaintiff must return to work to continue to receive compensation was not an offer

discussions continued, and the parties met with counsel on February 5, 2020 to discuss settlement. (Doc. 18, PAGEID 283-284). A tentative settlement agreement was reached during the meeting, but it was never finalized. (Doc. 18, PAGEID 290-291).

According to Defendants, Plaintiff's employment was terminated on Monday, December 23, 2019 because she failed to return to work. (Doc. 47-2, Jay Wallis Decl., PAGEID 1017). Plaintiff explains that she did not abandon her job but was operating under the understanding that she would no longer be paid if she did not return to work.

In her Complaint, Plaintiff brings claims for age discrimination (Count One); sex discrimination and "hostile sexual environment" (Count Two); wrongful termination in violation of public policy (Count Three); and retaliation (Count Four). However, Plaintiff has withdrawn her claim for age discrimination (Count One). (Doc. 48, PAGEID 1020).

Plaintiff seeks summary judgment in her favor on her claim for wrongful termination in violation of Ohio public policy (Count Three). Defendants seek summary judgment on Plaintiff's claims for sex discrimination and "hostile sexual environment" (Count Two); wrongful termination in violation of public policy (Count Three); and retaliation (Count Four).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

of compromise of Plaintiff's claims as is expressly required by Rule 408. Therefore Rule 408 is inapplicable.

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether this burden has been met by the movant, this Court views the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Sex discrimination

Ohio Revised Code § 4112.02 provides that it is an unlawful discriminatory practice "[f]or any employer, because of the . . . sex . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). The Ohio Supreme Court has "determined that the federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981). Therefore, the Court will cite to federal and Ohio case law interchangeably.

Plaintiff has set forth two different bases for her sex discrimination claim: disparate treatment and hostile work environment.

Because Plaintiff has not presented direct evidence of sex discrimination related to her termination, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 477 U.S. 792, 800-03 (1973). The first step of this framework requires Plaintiff to establish a *prima facie* case of discrimination: "(1) she is a member of a protected class; (2) she was subject to an adverse-employment action; (3)

she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees." *Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018) (citation omitted)

Only the fourth element is at issue here. Plaintiff points out that Ova Helton, a male, is performing job duties Lorna previously performed. (Doc. 40-5, PAGEID 852).[2] However, Holly Wallis, a female, also assumed some of the duties Plaintiff performed as Controller. (Id.)[3] Moreover, a person is "not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App. 3d 46, 55, 877 N.E.2d 377, 384 (Ohio Ct. App. 2007) (quoting *Atkinson v. Internatl. Technegroup, Inc.*, 106 Ohio App. 3d 349, 359, 666 N.E.2d 257, 264 (Ohio Ct. App. 1995)). From that perspective, Plaintiff was not replaced because there is evidence in the record that the duties she performed as Controller were assigned to existing employees. Therefore, Plaintiff has not established a *prima facie* case of sex discrimination based on disparate treatment.

The Court now turns to Plaintiff's claim that she was subject to a hostile work environment based on sex. The Ohio Supreme Court has explained that to establish a claim of hostile-environment sexual harassment, the plaintiff must show: "(1) that the

---

[2] Wallis testified that Ova Helton is not an employee of WNB but is a third-party contractor. (Doc. 53, Jay Wallis Dep., PAGEID 1189).

[3] Defendants argue that Plaintiff's last position was Sales Manager, but as Plaintiff points out, her final paycheck stub for the period of 11/29/2019 to 12/12/20219 identifies her position as "Controller." (Doc. 42-10, PAGEID 959). Moreover, Defendants' response to Plaintiff's First Set of Interrogatories clearly identify Helton and Holly Wallis as people who were performing "job duties previously performed by Plaintiff from September 1, 2019 to the present." (Doc. 40-5, PAGEID 852).

6

harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St. 3d 169, 176–77, 729 N.E.2d 726, 732–33 (Ohio 2000). The Ohio Supreme Court has also explained that:

> harassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex. However, harassment is not automatically discrimination because of sex merely because the words used have sexual content or connotations.

*Id*. at 735. Therefore, regardless of whether the comments Wallis made about Plaintiff's appearance are sexual, or simply abusive, the comments can form the basis of a hostile-environment sexual harassment claim.

Defendants do not question this point but have instead turned their focus to the argument that Plaintiff has not identified conduct which is sufficiently pervasive or severe to support a claim of hostile-environment sexual harassment.

The Ohio Supreme Court has explained that "in order to determine whether the harassing conduct was 'severe or pervasive' enough to affect the conditions of the plaintiff's employment, the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment." *Hampel*, 729 N.E.2d at 736. "Simple teasing, offhand comments, and

7

isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted).  A court must examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance." *Hampel*, 729 N.E.2d at 735.  The harassment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." 524 U.S. at 787.

When asked about the comments Wallis made to her about her appearance during the first time period she worked for WNB, Plaintiff testified as follows:

Q. Do you recall anything about the frequency of these comments?

A. No.

Q. How often they would happen?

A. No.

Q. So you can't tell me whether it was once day or once a year?

A. No.

Q. Did he ever touch you inappropriately during this time?

A. No.

Q. Did he ever ask you out?

A. No.

Q. Did he ever proposition you?

A. No.

8

>Q. Do you recall anything about how you would react or how you would deal with it when a comment like this was made?
>
>A. I just told him to stop it.
>
>Q. And what would he say?
>
>A. Laugh.
>
>Q. So how did these comments make you feel?
>
>A. I can't put that into words.
>
>Q. Well, can you describe anything about how you felt upon hearing a comment like this?
>
>A. Small.
>
>Q. What do you mean?
>
>A. Made me feel small.

(Doc. 39, Visant Dep., PAGEID 591).

Plaintiff explained that during her second tenure at WNB, Wallis would make comments to customers or vendors that he liked "walking behind her so I can look at her ass." (Doc. 39, Visant Dep., PAGEID 650). These comments would happen "a lot." (Id.) Wallis also made comments about Plaintiff's "butt" or "ass' when she was working under a desk "multiple times, all the time." (Doc. 39, Visant Dep., PAGEID 651). Plaintiff estimates that these comments were made between ten and one hundred times during the time she worked there. (Doc. 39, Visant Dep., PAGEID 664-665). In addition, Wallis made "odd sexual comments about women in general" and once called another female employee a lesbian. (Doc. 39, Visant Dep., PAGEID 652, 661). However, Wallis never touched Plaintiff inappropriately or propositioned her for sexual activity. (Doc. 39, Visant Dep., PAGEID 658-660).

9

The Court concludes that there is not sufficient evidence to create a genuine issue of material fact as to whether Wallis' comments were severe or pervasive enough to affect the conditions of Plaintiff's employment. While Wallis' comments were somewhat frequent, they were not associated with any physical contact or a threat of physical contact. The comments were certainly inappropriate, but Ohio courts and the Sixth Circuit have found that more serious or persistent conduct does not satisfy the hostile-work-environment element on summary judgment. *See Ault v. Oberlin Coll.*, 620 F. App'x 395, 400 (6th Cir. 2015) (collecting cases). Therefore, Plaintiff has not established a *prima facie* case of sex discrimination based on hostile work environment. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's sex discrimination claim.

### C. Ohio public policy

Plaintiff claims that Defendants violated clear public policy in Ohio that prohibits them from terminating her because she consulted with counsel.

To prove wrongful termination in violation of public policy, the plaintiff must show: "(1) that a clear public policy existed and was manifested in a state or federal constitution, in a statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element)." *Taylor v. Volunteers of Am.*, 153 Ohio App. 3d 698, 701, 795 N.E.2d 716, 718 (Ohio 2003). The clarity and jeopardy elements

involve questions of law and policy and are to be determined by the court. *Collins v. Rizkana*, 73 Ohio St. 3d 65, 70, 652 N.E.2d 653, 658 (Ohio 1995).

Courts in Ohio have held that "it is repugnant to the public policy of [Ohio] for employers to terminate employees for exercising their right to consult a lawyer." *Chapman*, 116 Ohio App.3d 534, 544, 688 N.E.2d 604 (Ohio Ct. App. 1997). However, this policy is against terminating an employee "*solely* for consulting an attorney." *Sharp v. Profitt*, 674 F. App'x 440, 449 (6th Cir. 2016) (quoting *Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 727 N.E.2d 137, 143 (Ohio Ct. App. 1999)). Ohio courts have not uniformly expanded this public policy to include employees who sue their employer. *See Terrell v. Uniscribe Pro. Servs., Inc.*, 348 F. Supp. 2d 890, 895 (N.D. Ohio 2004) (citing *Taylor v. Volunteers of America*, 153 Ohio App.3d 698, 702, 795 N.E.2d 716 (Ohio Ct. App. 2003)); *see also White v. Adena Health Sys.*, No. 2:17-CV-593, 2018 WL 3377087, at *12 (S.D. Ohio July 11, 2018) ("Importantly, Ohio courts evaluating public policy distinguish between employees who merely consult an attorney to ascertain their rights and employees who go on to file a lawsuit against their employer.").[4] As such, "[t]his policy applies squarely to a company retaliating against an employee for merely seeking legal advice about the merits of a potential lawsuit." *Sharp*, 674 F. App'x 440, 449 (citing *Plona v. U.P.S.*, No. 1:06–cv–1144, 2007 WL 509747, at * 3 (N.D. Ohio Feb. 13, 2007)). Here, Plaintiff claims she was terminated for seeking legal advice about her

---

[4]Defendants cite to *White v. Adena Health Systems* to argue that Plaintiff did not engage in activity protected by Ohio public policy. However, *White* is distinguishable because in that case, this Court found that the public policy protecting an employee's right to consult counsel did not extend to the plaintiff's discharge by her new employer as a result of her allegations against and settlement with her former employer. *See White v. Adena Health Sys.*, No. 2:17-CV-593, 2018 WL 3377087, at *13 (S.D. Ohio July 11, 2018). In this case, Plaintiff consulted an attorney about her present employer and *White* does not apply in this context.

11

demotion. Therefore, Plaintiff has established the clarity and jeopardy elements for purposes of the *prima facie* case.

Before moving on to the causation and overriding-justification elements, the Court has a point of clarification. In her supplemental briefing, Plaintiff seems to argue that she suffered a "demotion" or reduction in pay because she consulted with counsel. However, the letter Plaintiff's counsel emailed to Wallis on October 29, 2019 was *after* her position was changed from Controller to Local Sales Manager. Therefore, based on the evidence in this case, any "demotion" or reduction in pay could not have been the result of Plaintiff exercising her right to consult with counsel. Instead, Plaintiff must confine her wrongful termination claim to her original theory—that she was terminated on December 23, 2019 because she consulted with an attorney.

Defendants maintain that Plaintiff was not terminated because she consulted with an attorney; but was terminated for failing to return to work after the parties could not resolve their differences and negotiations stalled. However, the Court concludes that there are genuine issues of material fact as to whether Plaintiff's termination was motivated by conduct related to her consultation with an attorney (the causation element); and whether Defendants had a legitimate business justification for terminating her employment (the overriding-justification element). While Defendants have cited several cases which are inapplicable,[5] the Court finds that *Chapman v. Adia Servs., Inc.*, 116

---

[5]For instance, Defendants rely on *Popp v. Integrated Elec. Servs*, where an Ohio court of appeals found that the employer was entitled to summary judgment on employee's wrongful termination claim which was based on a threatening letter employee's counsel sent to the employer. However, it was not the nature of the communications which swayed the court, but the fact that the employee retained an attorney with regard to the employee's own business interests. *Popp v. Integrated Elec. Serv., Inc.*, 2005 WL 2488050, *4 (Ohio Ct. App. Oct. 10, 2005).

Ohio App. 3d 534, 688 N.E.2d 604 (Ohio Ct. App. 1997) provides helpful guidance here.

In *Chapman*, the plaintiff slipped and fell while on a work-related visit at Procter and Gamble ("P&G"), who was one of the defendant's customers. *Id*. at 606. The plaintiff consulted with an attorney to discuss the merits of a claim against P&G. *Id*. The defendant decided to remove the plaintiff from the P&G account and placed her on a paid leave of absence. *Id*. at 607. The defendant offered to transfer the plaintiff to two different positions within the company, but the plaintiff rejected these offers through counsel. *Id*. The defendant argued that the plaintiff's refusal of its offers for continued employment was evidence that she was not fired and that she instead voluntarily quit. *Id*. at 610. However, the court determined that because the employee chose to reject the employer's offers to transfer, "she must show that she was constructively terminated and that her termination was motivated by conduct related to the public policy." *Id*. (citing *Mauzy v. Kelly Services, Inc*., 75 Ohio St.3d 578, 588, 664 N.E.2d 1272, 1280 (Ohio 1996)). In that vein, the court explained:

> Adia admitted that the company placed Chapman on a paid leave of absence and attempted to transfer her to another branch because P & G believed that keeping Chapman on its account would create a conflict of interest. P & G felt that a conflict of interest would be created because Chapman had consulted a lawyer regarding a possible claim against P & G. Based on these facts, we are convinced that Chapman produced sufficient evidence to establish that if she were constructively terminated, which is a question for the trier of fact, her termination was motivated by conduct related to the public policy.

*Id*. at 611. Similarly, the Court finds that there is a genuine issue of material fact as to the causation and overriding justification elements. Plaintiff was placed on administrative leave after Defendants received a letter from her attorney. Defendant made offers to Plaintiff to return to work, which she rejected. If Plaintiff is able to establish that she was

13

constructively terminated, she has presented enough evidence at this stage of the proceedings to establish that her termination was motivated by conduct related to the public policy.

With regard to establishing constructive discharge, the court in *Chapman* explained:

> Courts generally apply an objective test when determining whether an employee has been constructively terminated. *Mauzy*, 75 Ohio St.3d at 588, 664 N.E.2d at 1280. "In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent." *Id*. at 589, 664 N.E.2d at 1281. A case-by-case analysis as well as "an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee" is required to determine whether a reasonable person would feel compelled to resign because of the conditions at the workplace. *Scandinavian Health Spa, Inc. v. Ohio Civ. Rights Comm.* (1990), 64 Ohio App.3d 480, 487, 581 N.E.2d 1169, 1173. No single factor is determinative. *Mauzy*, 75 Ohio St.3d at 589, 664 N.E.2d at 1281.

*Id*. at 611. Here, despite the negotiations and the tentative settlement reached between the parties, at the end of the day, Defendants offered Plaintiff nothing more than a position with a significant decrease in pay and unattainable sales goals. This is sufficient evidence to create a genuine issue of material fact as to whether a reasonable person would feel compelled to resign under these conditions.

Accordingly, Plaintiff's Motion for Summary Judgment is DENIED; and Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's claim for wrongful discharge in violation of public policy.

### D. Retaliation

Ohio Revised Code § 4112.02(I) prohibits retaliation by an employer against an employee. The statute provides that it shall be an unlawful discriminatory practice:

> For any person to discriminate in any manner against any other person

> because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Ohio Rev. Code § 4112.02(I). To establish a *prima facie* case of retaliation, the plaintiff must show that "(1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 879 N.E.2d 174, 180 (Ohio 2007). "If a complainant establishes a *prima facie* case, the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id*. (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "If the employer satisfies this burden, the burden shifts back to the complainant to demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id*. (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Plaintiff maintains that she engaged in protected activity when she asked Wallis to stop making his sexist statements. Protected activity includes the filing of formal discrimination charges, but also complaints to management and less formal protests of discriminatory employment practices. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Therefore, for purposes of the *prima facie* case, Plaintiff has established that she engaged in a protected activity. In addition, there appears to be no dispute that Defendants were aware that Plaintiff had engaged in that activity because the complaints were made directly to Wallis.

Plaintiff maintains that her demotion into the sales role, the reduction in pay, and

her ultimate termination are adverse employment actions which satisfy the third prong of a *prima facie* case. Plaintiff also maintains that her retaliation claim is being brought under a hostile workplace theory. Defendants respond that Plaintiff is raising this for the first time as part of the briefing on summary judgment. Nevertheless, Defendants maintain that even if they conceded this prong of the *prima facie* case, Plaintiff still is unable to establish a causal connection between the complaints made to Wallis and any adverse employment action.

Plaintiff relies on temporal proximity to establish a causal connection. As this Court has explained:

> A causal connection can be shown through direct evidence or through knowledge coupled with a closeness in time that creates an inference of causation. Close temporal proximity between the employer's knowledge of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal connection, but only if the adverse employment action occurs very close in time after an employer learns of a protected activity. However, where some time elapses between when the employer learns of the protected activity and the subsequent adverse employment action is taken, the employee must produce other evidence of retaliatory conduct to establish causation.

*Hines v. Humana Ins. Co.*, 689 F. Supp. 3d 516, 533 (S.D. Ohio 2023) (quoting *Sullivan v. IKEA*, 2020-Ohio 6661 at ¶ 37, 2020 WL 7329934 at *7 (Ohio Ct. App. Dec. 14, 2020) (internal citations omitted)). Here, Plaintiff explains that Wallis issued the October 21, 2019 letter altering her employment within one or two months after she complained about Wallis' sexist comments. However, the last time she complained about Wallis' comments was not the only time Plaintiff complained. Plaintiff testified that Wallis made the comments when she first worked at WNB between 2012 and 2016 and Plaintiff told him to stop. (Doc. 39, Visant Dep., PAGEID 591). When Plaintiff returned to work for WNB in 2017 and the comments by Wallis continued, she continued to tell him to stop. (Doc.

16

39, Visant Dep., PAGEID 666, 681). Therefore, the evidence in the record shows that Plaintiff complained about Wallis' comments over a long period of time. Given these facts, temporal proximity alone is not enough evidence to establish causation. Without any other evidence of retaliatory conduct, Plaintiff's retaliation claim cannot survive summary judgment. While Plaintiff has raised retaliatory harassment as a possible theory of proof, there is similarly no connection between any retaliatory harassment and Plaintiff's complaints. *Accord Doe v. City of Detroit, Michigan*, 3 F.4th 294, 305 (6th Cir. 2021) (explaining that without more, speculation that the plaintiff's relationship with supervisors was poor because of her complaints is insufficient to survive summary judgment).

Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claim for retaliation under Ohio Revised Code § 4112.02(I).

### III. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff Lorna Vinsant's Motion for Summary Judgment (Doc. 43) is **DENIED** and Defendants WNB Group, LLC dba The Ray Hamilton Moving Company and Jay Wallis' Motion for Summary Judgment (Doc. 40) is **GRANTED in PART and DENIED in PART**. Plaintiff's claim for wrongful termination in violation of public policy (Count Three) remains pending; all other claims are **DISMISSED**.

IT IS SO ORDERED.

                                                */s/ Michael R. Barrett*
                                                Michael R. Barrett
                                                United States District Court